**In re Douglas Carey TANK, Kathleen Faye Tank, Debtors.**

**Bankruptcy No. 83–02417.**

United States Bankruptcy Court, E.D. Wisconsin.

June 5, 1985.

Alan A. Olshan, Milwaukee, Wis., for debtors.

Russell C. Schallert, Milwaukee, Wis., for Continental Sav. & Loan.

DECISION AND ORDER

D.E. IHLENFELDT, Bankruptcy Judge.

The debtors have filed a motion asking the court to pass upon the reasonableness

of attorneys fees paid by Continental Savings & Loan Association (Continental) for services rendered in connection with a case under chapter 13 of the Bankruptcy Code.

The debtors, Douglas and Kathleen Tank, filed a chapter 13 petition on June 29, 1983. Continental held a first mortgage on the debtors' homestead, and their plan provided for monthly mortgage payments of $640 to be made directly to Continental by the debtors. Mrs. Tank was shown as being employed with a net bi-weekly take home pay of $154.57.

Mrs. Tank failed to appear at the § 341(a) hearing on August 23, 1983. The court minutes show that she was then in the hospital and no longer employed. The attorney for Continental appeared at the hearing, which was adjourned to September 20, 1983.

The minutes for the September 20, 1983 hearing show that Mrs. Tank appeared at the hearing, that she had lost her job, and that a new plan would be submitted. Continental appeared by counsel at the hearing, which was adjourned to November 1, 1983. The minutes state that regular monthly mortgage payments were not being made to Continental.

A new plan and new set of schedules were filed on October 20, 1983, showing Mrs. Tank with a new employer and a net bi-weekly take home pay of $325.00. Minutes for the November 1, 1983 hearing reflect efforts to work out a feasible plan in light of the debtors' situation at that time. The plan was to be modified to provide for reduced payments to general unsecured creditors, and a car owned by the debtors was to be sold, inasmuch as Mrs. Tank was to be furnished a car in connection with her new employment. The trustee said that, assuming the accuracy of the amended schedules, he would recommend confirmation of the plan as thus modified. The hearing was then adjourned to December 6, 1983, pending notice to creditors of the modification. Continental was represented by counsel at the November 1, 1983 hearing, and the minutes state that Continental had not been receiving regular monthly mortgage payments.

On November 9, 1983, Continental filed a motion to vacate the stay of § 362 of the Bankruptcy Code. The motion recited that although the debtors' plan as initially filed and as modified called for the debtors to make regular monthly mortgage payments to Continental, such payments had not been made, the debtors then being four months behind in such payments. The motion also noted that the latest modification of the debtors' plan failed to make any provision for past-due payments for real estate taxes and hazard insurance premiums.

Continental's motion was heard on December 6, 1983. The debtors claimed the present value of their home was $85,000. Having in mind the amount of Continental's claim, the unpaid real estate taxes, and the amount of interest and taxes that would accrue during the time it would take Continental to file a foreclosure action, await the running of the period of redemption and gain possession of the property (but not including the cost of a subsequent sale of the property), it appeared "on paper" that Continental might be provided with "adequate protection" solely by virtue of the value of the property. § 362(d)(1) of the Code. Continental's attorney asked for an adjournment in order to obtain an appraisal of the property. In addition to the question of whether or not Continental had adequate protection, the trustee asked the debtors to furnish more information about Mrs. Tank's new job and the amount of income she might reasonably expect to earn from it. Confirmation was held up pending these matters, and the hearing was adjourned to January 17, 1984.

Through error, a written order of confirmation was entered on December 1, 1983. At the time, the issues of whether or not the modified plan should be confirmed and Continental's motion to vacate stay were still pending before the court.

At the January 17, 1984 hearing, Continental's attorney submitted an appraisal of the debtors' homestead showing a value of $74,000. The tax assessor for the City of

New Berlin placed the value at $80,900. If Continental's appraisal was correct, Continental was without adequate protection. If the city assessor's valuation was correct, Continental's situation was marginal at best. Having made some payments, the debtors were then three months in arrears in post-petition mortgage payments. The court denied Continental's motion, directed Continental to file an amended claim including the post-petition arrearage, and indicated that it would reschedule Continental's motion on short notice if at any time the debtors failed to make a monthly mortgage payment.

The December 1, 1983 order was allowed to stand as the confirmation order in the case, and on January 23, 1984 Continental filed a claim for pre- and post-petition arrearages in the amount of $10,425.76. The plan provided for the debtors to make their regular monthly mortgage payments directly to Continental, and to pay the claim for arrearages through payments to the trustee. The claim included $2,510.50 for attorneys fees, as well as interest accruing on the claim during the life of the plan and until the claim was paid. No objection was made to the claim as filed.

On August 23, 1984, the trustee moved to dismiss the case. The debtors had materially defaulted with respect to the plan, having made no payments to the trustee after June 8, 1984. § 1307(b)(6). Further, because of earlier omissions in payments, the plan was no longer feasible. At the hearing on the trustee's motion on October 16, 1984, it appeared that the debtors were up to date with their monthly mortgage payments to Continental, but that payments to the trustee had been sporadic. Mrs. Tank had terminated her employment because she felt it was not in the best interest of her children, and was again seeking employment. The trustee felt that in light of the changes in the debtors' circumstances, they would have to do some "belt tightening." His motion was adjourned to November 14, 1984 to permit the debtors to reevaluate their position and to "make some decisions on priorities."

At the November 14, 1984 hearing, it was clear that the plan was no longer feasible. The debtors had incurred post-petition obligations of $3,500, and the amounts needed to pay out Continental's claim during the life of the plan had escalated greatly. The court agreed to hold the case open to permit the debtors to try to sell their home and avoid a foreclosure and the trustee's motion was adjourned to February 26, 1985.

By letter on January 15, 1985, Continental asked that its motion for relief from stay be rescheduled. The letter noted that Continental's mortgage loan account, including anticipated accruals and estimated fees until a sale could be had now totalled $74,490, and that their appraisal had shown a value of $74,000. A hearing scheduled for January 29, 1985 was adjourned by agreement of the parties to February 26, 1985. At that hearing, the debtors converted the case to a case under chapter 7, and the court ordered the stay lifted as to Continental. The debtors retained hope of selling their home before a sheriff's sale. Their interest in the home had been claimed as exempt, and on April 9, 1985, the chapter 7 trustee filed a "no-asset" report.

On May 15, 1985, the debtors filed a motion indicating that Continental was requesting reimbursement of $2,510.50 which it had paid its attorneys for fees and disbursements for services rendered in connection with the chapter 13 case. (This was the same amount that Continental had included in the claim it filed following confirmation of the plan on January 17, 1984.) The debtors felt this was excessive and asked that the court issue an order denying the fees. On June 3, 1985, at the hearing on this motion, the court was advised that following the lifting of the stay, Continental had commenced a foreclosure action which was still pending, and that the house had subsequently been sold.

Continental has paid its attorneys the fees and disbursements in issue and is now asking for reimbursement. The debtors have not challenged the hourly rates used by Continental's attorneys, but contend that the amount asked is "unjust, arbitrary and grossly out of line considering the limited amount of work, if any, performed by the creditor's law firm."

The situation in this case is not unlike that in the case of *In re Turner*, 724 F.2d 338 (2d Cir.1983). In *Turner*, the debtor claimed as exempt a cause of action against her landlord. She brought the action in bankruptcy court and obtained a judgment of $1,475 which was modified and affirmed by the district court. On appeal, the court of appeals reversed and instructed the bankruptcy court to dismiss the debtor's complaint. The court pointed to the fact that the action would not benefit the bankruptcy estate. The court said (p. 341):

"Turner brought the present action, which she had reclaimed from the estate pursuant to § 522(d), in her own name. There is no suggestion that the proceeds would be turned over to the trustee, or accounted for to him, and the judgment below orders Ermiger to pay the damages directly to her. Failure to recover on the claim against Ermiger could not increase her exemption claim under § 522(d) of the Code since her exemptions had already exhausted the estate. On these facts, there is no showing that Turner's action against Ermiger had any 'significant connection' with her bankruptcy case. It therefore falls outside the scope of § 1471(b), which allows the district courts to conduct civil proceedings 'related to' cases under Title 11."

Disputes concerning the reasonableness of attorneys fees are, of course, commonly presented to this court, and the court would have no inherent difficulty in ruling on those brought into question by the debtors' motion. The difficulty here is one of jurisdiction. As in the *Turner* case, the proceeds from the sale of the homestead that are here in dispute will not under any circumstances benefit the bankruptcy estate.

Although the attorneys services referred to in the debtors' motion were performed in relation to the chapter 13 case in this court, the dispute concerns itself with the contract between the parties and is governed by State law. Opinions may differ as to whether or not the *Turner* decision is correct and whether it is applicable to the situation in this case, but at the least it raises a serious question of jurisdiction and the possibility, if jurisdiction does not exist, that the sole end result of a ruling by this court, as in the *Turner* case, would be a great waste of judicial resources. With the state foreclosure court having jurisdiction to rule upon the other fees and expenses incurred by Continental, the possibility is created for appeals to be taken in two separate court systems regarding liability for attorneys fees and disbursements in connection with the same contract. Like this court, the state court is a court of equity, clearly has jurisdiction, and is in a position to determine promptly and fairly the amount of expenses, including attorneys fees and disbursements, for which Continental should be reimbursed pursuant to its contract. Whether or not this court has jurisdiction to rule upon the debtors' motion, this is a situation where, in the interest of justice, the court ought to abstain from so doing. T. 28 U.S.C. § 1334(c)(1). Accordingly,

IT IS ORDERED that the court abstains from hearing the debtors' motion to pass upon the reasonableness of the attorneys fees and disbursements for which Continental Savings & Loan Association is seeking reimbursement.